# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------X
                             :
RICHARD R. QUINT             :    Civil No. 3:21CV01695(SALM)
                             :
v.                           :
                             :
MARTIN, et al.               :    February 24, 2022
                             :
-----------------------------X
```

## INITIAL REVIEW ORDER

Self-represented plaintiff Richard R. Quint ("plaintiff") is an inmate in the custody of the Connecticut Department of Correction ("DOC") at the Bridgeport Correctional Center ("BCC").[1] Plaintiff brings this action pursuant to 42 U.S.C. §1983 against ten defendants: Warden Martin; Lt. Hacket; C/O Spieght; Counselor King; Counselor Jones; Counselor JackoRusso; Dr. Rader; Medical Supervisor Kara Philips; RN Tracy Patterson;

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reports that plaintiff is an unsentenced inmate. See Connecticut State Department of Correction, Inmate Information, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=123433 (last visited Feb. 22, 2022). Additionally, plaintiff alleges that he is a pretrial detainee. See Doc. #10 at 3, ¶4.

and Nurse Jesse (collectively the "defendants"). <u>See</u> Doc. #10 at 2-5.[2] Plaintiff proceeds pursuant to a Second Amended Complaint. <u>See</u> Doc. #10. All of the events underlying the allegations in the Second Amended Complaint occurred while plaintiff was housed at Corrigan Correctional Institution ("Corrigan"), where plaintiff "was a pre-trial detainee." <u>Id.</u> at 3, ¶4. Plaintiff alleges "violation of his constitutional rights to receive medical care, his constitutional rights as to liberty interest, constitutional right to due process[.]" <u>Id.</u> at 2, ¶1 (sic). Plaintiff also purports to seek relief "pursuant to the American with Disability Act and the Rehabilitation Act." <u>Id.</u> (sic). Plaintiff seeks damages as well as declaratory and injunctive relief. <u>See id.</u> at 13-14. All defendants are sued in their official and individual capacities. <u>See id.</u> at 2-5, ¶¶5-12.

I. <u>**LEGAL STANDARD**</u>

Under section 1915A of Title 28 of the United States Code, the Court <u>must</u> review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). The Court then must "dismiss the complaint, or any portion of the

---

[2] The Court refers to the page number contained in the ECF heading of the documents cited to in this Initial Review Order.

complaint, if" it "is frivolous or malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b). The commands of §1915A "apply to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid the filing fee." Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam). Dismissal under this provision may be with or without prejudice. See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004).

A civil complaint must include sufficient facts to afford defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. See Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

It is well-established that complaints filed by self-represented litigants "'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d

3

471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for self-represented litigants). However, even self-represented parties must comply with Rule 8 and the other rules of pleading applicable in all federal cases. See Harnage v. Lightner, 916 F.3d 138, 141 (2d Cir. 2019); see also Wynder v. McMahon, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike.").

## II.  ALLEGATIONS OF THE AMENDED COMPLAINT

The Court accepts the well-pleaded allegations of the Complaint as true for purposes of this initial review.

In 2019, plaintiff was "hit by a pickup truck crushing the front of his pelvis" and causing other significant injuries. Doc. #10 at 5, ¶¶14-16.

On January 22, 2021, plaintiff was placed in the custody of the DOC, at which time he was housed at BCC and "had a cane[.]" Id. at 6, ¶18. On March 18, 2021, plaintiff was transferred to Corrigan, and had received approval to bring the cane, which was metal, with him to Corrigan. See id. at ¶19.

On July 25, 2021, while at Corrigan, plaintiff started requesting a new rubber tip for the bottom of his metal cane,

4

because plaintiff "was starting to slip with, was afraid of falling and breaking something else." Id. at ¶20 (sic).[3] On July 28, 2021, plaintiff asked Nurse Tracy Patterson "if he could get a new rubber tip for his cane[,]" to which Nurse Patterson stated that she would return later to retrieve the metal cane. Doc. #10 at 6, ¶21. C/O Spieght initially told plaintiff that "medical was coming for his cane[,]" but later returned and took plaintiff's metal cane, "telling him it was contraband." Id. at ¶¶22-23. Shortly thereafter, Nurse Patterson returned to plaintiff's cell "to get cane to bring to medical to replace tip[,]" but by that time, it had been confiscated by C/O Spieght. Id. at ¶24 (sic).

Plaintiff alleges that he "has not left his cell in 150 days since they took his cane except to go to count or make legal calls with a walker or wheelchair[,]" because he is "traumatized by" the replacement wood cane defendants have provided for his use, and fears that "he will fall again on concrete and end up bed ridden again or paralized." Id. at 7, ¶¶25-26 (sic).

---

[3] Plaintiff alleges that he "did not feel safe as his cane was not griping the floor properly due to metal shaft wearing through the rubber making cane slip on tiled floors." Doc. #10 at 11 (sic).

"Plaintiff does not understand why the Defendants did not make the reasonable accommodation of putting new rubber tip on" his old metal cane. Doc. #10 at ¶29 (sic). On July 29, 2021, plaintiff wrote to the Deputy Warden about this issue, who informed plaintiff that "only medical can approve or deny canes" and that "C/O Spieght has no authority over this issue." Id. at ¶30. Plaintiff again wrote the Warden regarding his cane, to which the warden responded: "I have made medical aware you will be given rubber tip asap." Id. at 8, ¶31.

On August 16, 2021, "Plaintiff wrote request to Lt. Hacket, who offered the Plaintiff the [wood] cane the Plaintiff has fallen with in the past and is traumatized by, which the Plaintiff has told both custody and medical." Id. at ¶32 (sic). Plaintiff again wrote Lt. Hacket on August 20, 2021, regarding the cane. See id. at ¶33.

On December 14, 2021, Nurse Aimee removed "all the walker and crutches from Counselor Jones office." Id. at 9, ¶37 (sic). "Counselor Jones told the Plaintiff medical would not give him a walker for Plaintiff to use. The only thing medical would provide is the [wood] cane[,] ... which he has told medical he will not use." Id. at ¶38. As a result, "plaintiff did not receive his Legal between 12/13/21 and 12/17/21." Id. (sic).

Plaintiff alleges that Nurse Jesse and Counselor Jones "taunt[ed plaintiff] telling [him the] only way to make legal calls is use the cane they knew [plaintiff] would not." Doc. #10 at 11.

Plaintiff asserts: "The Defendants have refused to give the Plaintiff anything but the cane he is afraid of[.]" Id. He further asserts that defendants "conspired together with deliberate indifference to the plaintiff's rights[.]" Id. at 12.

## III. DISCUSSION

Plaintiff's Second Amended Complaint [Doc. #10] suffers from several pleading deficiencies. The Court addresses each in turn.

### A.   Official Capacity Claims for Money Damages

Plaintiff asserts claims against defendants in both their individual and official capacities for money damages. See generally Doc. #10 at 3-5, 14. Any claims for money damages against the defendants, who are state employees, in their official capacities, are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). "Section 1983 does not abrogate state sovereign immunity. Nor has [plaintiff] alleged any facts suggesting that the state has waived immunity in this case." Kerr v. Cook, No. 3:21CV00093(KAD), 2021 WL 765023, at *5 (D. Conn. Feb. 26, 2021) (internal citation

omitted). Accordingly, all claims against the defendants in
their official capacities for money damages are **DISMISSED, with
prejudice**.

    B.   <u>Personal Involvement</u>

    "It is well settled in this Circuit that personal
involvement of defendants in alleged constitutional deprivations
is a prerequisite to an award of damages under §1983[.]" <u>Komondy
v. Gioco</u>, 253 F. Supp. 3d 430, 456 (D. Conn. 2017) (citation and
quotation marks omitted). Thus, "[a] plaintiff must plead that
each Government-official defendant, through the official's own
individual actions, has violated the Constitution." <u>Iqbal</u>, 556
U.S. at 676.

    As previously noted, plaintiff names ten defendants.
However, the allegations of the Second Amended Complaint largely
refer to "defendants" and fail to specifically identify which
defendant participated in the constitutional violation. Indeed,
the Second Amended Complaint makes <u>no</u> substantive allegations
against three named defendants: Counselor JackoRusso; Dr. Rader;
and Kara Philips. <u>See generally</u> Doc. #10. Accordingly, all
claims against Counselor JackoRusso, Dr. Rader, and Kara Philips
are hereby **DISMISSED, without prejudice**, for lack of personal
involvement. <u>See, e.g.</u>, <u>Abascal v. Jarkos</u>, 357 F. App'x 388, 391

8

(2d Cir. 2009) (District court "properly dismissed" Eighth Amendment claims where self-represented plaintiff "failed to plead facts showing [defendant's] personal involvement[]" in the alleged constitutional violation.).[4]

    C.   <u>ADA and Rehabilitation Act Claims</u>

    Plaintiff asserts at the outset of the Second Amended Complaint that he "seeks an injunction and damages pursuant to the Americans with Disabilities Act and the Rehabilitation Act." Doc. #10 at 2, ¶1. Other than vaguely asserting that "defendants" denied him a "reasonable accommodation[,]" <u>see</u> <u>id.</u> at 7, ¶29, the Second Amended Complaint does not specifically assert these claims.

    Even setting aside this obvious pleading deficiency, "[n]either Title II of the ADA nor §504 of the Rehabilitation Act provides for individual capacity suits against state officials." <u>Currytto v. Doe</u>, No. 3:18CV01392(JAM), 2019 WL

---

[4] Some of these defendants are referred to on the attachments to the Second Amended Complaint. Neither the Court, nor defendants, should be expected to review these exhibits and guess which defendant referenced therein participated in which alleged constitutional violation. <u>See</u> <u>Carmel v. CSH & C</u>, 32 F. Supp. 3d 434, 436 (W.D.N.Y. 2014) ("[E]ven a <u>pro</u> <u>se</u> litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim.").

2062432, at *6 (D. Conn. May 9, 2019). To the extent plaintiff
attempts to assert these claims against defendants in their
official capacities, the transfer of plaintiff to BCC moots his
requests for injunctive relief (as will be discussed further
below), and "this likewise precludes [plaintiff] from proceeding
with his official capacity claims against individual defendants
under the ADA and Rehabilitation Act." Id.

Accordingly, all ADA and Rehabilitation Act claims asserted
against defendants in their individual and official capacities
are **DISMISSED, with prejudice.** See id.

D.   Sixth Amendment

Plaintiff alleges that "defendants" and specifically
Counselor King and Counselor Jones failed to provide plaintiff
with a walker to make legal calls, and instead would only
provide plaintiff with the wood cane he "is traumatized by" in
violation of the plaintiff's "1st, 6th and 14 Amend. Rights."
Doc. #10 at 7, ¶28 (sic); see also id. at 9, ¶38. As to
Counselor Jones, plaintiff alleges that he "did not receive his
Legal between 12/13/21 and 12/17/21." Id. at 9, ¶38 (sic).

"The Sixth Amendment guarantees defendants the right to
counsel in criminal proceedings." Whitaker v. Campbell, No.
3:19CV01357(VLB), 2019 WL 5696035, at *2 (D. Conn. Nov. 4,

10

2019). "Inmates must have a reasonable opportunity to seek and receive the assistance of attorneys and policies and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid. This right is especially critical during the period before trial." Pena v. Semple, No. 3:19CV00261(KAD), 2019 WL 1317920, at *4 (D. Conn. Mar. 22, 2019) (citation and quotation marks omitted); see also O'dell'bey v. Semple, No. 3:19CV00304(JAM), 2020 WL 127698, at *8 (D. Conn. Jan. 10, 2020) ("[A] regulation that restricts a detainee's opportunity to be in contact with his attorney is unconstitutional if it unreasonably burdened the inmate's opportunity to consult with his attorney and to prepare his defense." (citation and quotation marks omitted)).

The allegations of the Second Amended Complaint fail to state a claim for violation of plaintiff's Sixth Amendment right to counsel as a pretrial detainee.

> Although [plaintiff] alleges restrictions on his
> initiation of calls to his attorney, he does not allege
> that defendants stopped his attorney from initiating
> calls to him, or visiting him, or sending him legal mail
> concerning the case. Courts have held that an inmate's
> Sixth Amendment right to counsel is not unreasonably
> burdened if he has other means to contact his attorney.

O'dell'bey, 2020 WL 127698, at *8. "As [plaintiff] does not allege that he was unable to contact his attorney by other means, he fails to state a ... Sixth Amendment claim." Pena, 2019 WL 1317920, at *4; O'dell'bey, 2020 WL 127698, at *9 ("Given that O'dell'bey had alternative methods of contacting his attorney during the period when his access to the telephone was limited, and he did not indicate that these alternative methods were inadequate to permit him to prepare his case, O'Dell'bey has not pled facts sufficient to state a violation of his Sixth Amendment right to counsel." (sic)).

Accordingly, plaintiff's Sixth Amendment right to counsel claims are **DISMISSED, without prejudice.**[5]

E.    Denial of Access to the Courts - Confiscation of Book

Plaintiff alleges that on June 7, 2021, he "ordered the Jail House Lawyers Manual to help him with his legal work[,]" but that the book "was rejected" by DOC because it weighs over four and a half pounds. Doc. #10 at 13. Plaintiff asserts that the confiscation of the book "violates [his] due process rights to access the Courts." Id.

---

[5] The Court is also skeptical of the merits this claim given that plaintiff has been offered the use of a cane, but has refused to use that assistive device.

The allegations of the Second Amended Complaint fail to state a claim for denial of access to the courts related to the confiscation of the book. "To state a claim for denial of access to the courts, the plaintiff must assert non-conclusory allegations showing both that the defendant acted deliberately and maliciously, and that he suffered an actual injury. The plaintiff must allege that the defendant took, or was responsible for, actions that frustrated his efforts to pursue a nonfrivolous legal claim." Velasco v. Gonclavez, No. 3:21CV01573(MPS), 2022 WL 19340, at *2 (D. Conn. Jan. 3, 2022) (citations omitted). Plaintiff has failed to allege any of the components necessary to state a claim for denial of access to the courts related to the confiscation of his legal book. See, e.g., Germano v. Dzurenda, No. 3:09CV01316(SRU), 2011 WL 1233254, at *2 (D. Conn. Mar. 30, 2011) (denying motion for preliminary injunction where although the plaintiff "appear[ed] to argue that the confiscation of his books has created a violation of the First Amendment right to access of the courts[,]" he did not "sufficiently allege[] that he ha[d] been prejudiced by lack of access to the ... textbooks."). Also, this particular book is not alleged to be (and could not be) essential to his access to the Courts.

13

Accordingly, the claim asserting denial of access to the Courts from the confiscation of the legal book is **DISMISSED, without prejudice.**

F.   Denial of Access to the Courts – Failure to Provide Assistive Device of Plaintiff's Choosing

Plaintiff alleges that "defendants" violated his First and Fourteenth Amendment rights of access to the courts by failing to provide him with an assistive device with which plaintiff felt comfortable. Reading the Second Amended Complaint liberally, plaintiff appears to assert this claim against Warden Martin, Lt. Hacket, Counselor Jones, and Counselor King.

To reiterate: "To state a claim for denial of access to the courts, the plaintiff must assert non-conclusory allegations showing both that the defendant acted deliberately and maliciously, and that he suffered an actual injury. The plaintiff must allege that the defendant took, or was responsible for, actions that frustrated his efforts to pursue a nonfrivolous legal claim." Velasco, 2022 WL 19340, at *2 (citations omitted). Plaintiff has failed to allege that he suffered any actual injury from the alleged denial of his access to the Courts. Additionally, the Court is highly skeptical of the merits of this claim given that many, if not all, of the named defendants offered numerous times to provide plaintiff

14

with a wooden cane that plaintiff refused to use. See, e.g.,
Doc. #10 at 26, 41, 43.

Accordingly, all claims asserting denial of access to the
Courts related to the failure to provide plaintiff with an
assistive device of his choosing are **DISMISSED, without
prejudice.**

G.   Fourteenth Amendment – Liberty Interest

Plaintiff asserts several times that defendants have
violated his Fourteenth Amendment rights. See generally Doc.
#10. Plaintiff primarily focuses on the loss of his "liberty
interest," asserting that he has been unable to leave his cell
for over 150 days due to defendants' failure to provide a rubber
tip for his now-confiscated metal cane. See id. at 7-12. Reading
the Second Amended Complaint liberally, plaintiff appears to
assert this claim against C/O Spieght, Nurse Patterson, Warden
Martin, Lt. Hacket, Counselor King, and Counselor Jones.

"[R]estrictions on pretrial detainees that implicate a
liberty interest protected under the Due Process Clause may not
amount to punishment of the detainee." Benjamin v. Fraser, 264
F.3d 175, 188 (2d Cir. 2001) (citation and quotation marks
omitted). "In assessing whether restrictions on pretrial
detainees comport with substantive due process, a court must

15

decide whether the condition is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." O'dell'bey, 2020 WL 127698, at *5 (citation and quotation marks omitted).

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Legitimate government objectives include maintaining security and order at the institution and making certain no weapons or illicit drugs reach detainees[.]

Id. (citation and quotation marks omitted).

The allegations of the Second Amended Complaint fail to state a claim for the violation of plaintiff's liberty interests under the Fourteenth Amendment. First, the attachments to the Second Amended Complaint reflect that defendants have offered plaintiff the use of a wood cane many times, but plaintiff has refused to use it. See Doc. #10 at 26, 41, 43. Second, the attachments also reflect that metal canes, like the one previously used by plaintiff, are "not allowed by custody." Id. at 33; see also id. at 41 ("As explained in past, you can not have a metal cane per policy. You have been offered a wooden cane on several occasions. You can not have a new tip to place on your metal cane." (sic)); id. at 43 ("Once again Mr. Quint your (METAL) cane is not allowed in the unit. I have offered a

wooden one which is what all inmates in facility have which you refused."). The restriction on metal canes is not imposed for punishment, but rather appears to be the incident of another legitimate governmental purpose – that is, maintaining safety and security at the facility. Accordingly, all claims asserting a violation of plaintiff's Fourteenth Amendment liberty interests are **DISMISSED, without prejudice**.[6]

H.  <u>Deliberate Indifference to Serious Medical Needs</u>

The Court construes the Second Amended Complaint as asserting a Fourteenth Amendment violation for deliberate indifference to plaintiff's serious medical needs related to the failure to provide plaintiff with a new rubber tip for his metal cane.

> [A] detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants <u>knew</u> that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants <u>should have known</u> that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health.

<u>Charles v. Orange Cty.</u>, 925 F.3d 73, 87 (2d Cir. 2019).

---

[6] Plaintiff also conclusorily asserts that defendants violated his "Right to ... Due Process[.]" Doc. #10 at 12. The Second Amended Complaint makes no reference to violative process, or how that process was allegedly insufficient. Accordingly, any claim asserting a violation of plaintiff's due process rights is **DISMISSED, without prejudice.**

> Deliberate indifference, in this context, may be shown by evidence that the official acted with reckless disregard for the substantial risk posed by the detainee's serious medical condition. See, e.g., Farmer [v. Brennan, 511 U.S. 825, 836 (1994)] ("[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."). Thus, in order to establish deliberate indifference, a plaintiff must show "something more than mere negligence"; but proof of intent is not required, for the deliberate-indifference standard "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id.

Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). Even if medical treatment of a pretrial detainee is inadequate, "mere medical malpractice is not tantamount to deliberate indifference absent a showing of conscious disregard of a substantial risk of serious harm." Darby v. Greenman, 14 F.4th 124, 129 (2d Cir. 2021) (citation and quotation marks omitted).

It is clear from the allegations of the Second Amended Complaint that plaintiff's issue with defendants' refusal to provide plaintiff with a metal cane, as opposed to a wood cane, amounts to nothing more than a disagreement about appropriate treatment, which is insufficient to support a claim of deliberate indifference. See Chance, 143 F.3d at 703. ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.").

Accordingly, all claims asserting a Fourteenth Amendment
violation for deliberate indifference to serious medical needs
is **DISMISSED, without prejudice**.[7]

I.   Requests for Declaratory and Injunctive Relief

In addition to damages, plaintiff seeks declaratory and
injunctive relief. See Doc. #10 at 13-14.

As injunctive relief plaintiff seeks: (1) the return of
plaintiff's metal cane "with a new tip on it[;]" (2) the return
of plaintiff's "Jail House Lawyer's Manual[;]" and (3) an order
"enjoining the defendants from Harassing the Plaintiff[.]" Id.
at 13. Plaintiff also seeks a declaratory judgment that
defendants "violated the plaintiffs Constitutional Rights" and
that the "policy of denial of books weighing over 4 1/2 pounds
is illegal under the U.S. Constitution." Id. (sic),

As previously noted, the allegations of the Second Amended
Complaint relate to plaintiff's incarceration at Corrigan. On
February 17, 2022, plaintiff filed a Notice of Change of Address

---

[7] Plaintiff asserts that defendants "conspired together with
deliberate indifference to the Plaintiffs Rights to deprive him
of said Rights[.]" Doc. #10 at 12 (sic). Plaintiff pleads no
facts about this conspiracy beyond that it exists. Such
conclusory allegations are insufficient to state a claim for
conspiracy under 42 U.S.C. §1983. See Ciambriello v. Cty. of
Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002).  Accordingly, any
purported conspiracy claims are **DISMISSED, without prejudice.**

stating that he has been transferred to BCC. <u>See</u> Doc. #15. In light of plaintiff's transfer to a new facility, plaintiff's requests for injunctive and declaratory relief against defendants are **DISMISSED, as moot.** <u>See</u> <u>Thompson v. Carter</u>, 284 F.3d 411, 415 (2d Cir. 2002) ("A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility."); <u>Salahuddin v. Goord</u>, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

IV.   <u>**CONCLUSION AND ORDERS**</u>

The Court enters the following orders:

**(1)**   The Second Amended Complaint [Doc. #10] is **DISMISSED, without prejudice,** except for: (a) the claims against the defendants in their official capacities for money damages; (b) the claims asserted pursuant to the ADA and Rehabilitation Act; and (c) the claims for declaratory and injunctive relief, all of which are **DISMISSED, with prejudice.**

**(2)** The Court grants plaintiff <u>one</u> opportunity to file a third amended complaint, correcting the deficiencies identified in this Order. Plaintiff is advised that any third amended

20

complaint will completely replace the Second Amended Complaint
in the action. No portion of the Second Amended Complaint [Doc.
#10] will be incorporated into the Third Amended Complaint by
reference, or considered by the Court. Any such Third Amended
Complaint must be filed by **March 28, 2022.**

If plaintiff elects to file a Third Amended Complaint, the
Court will then conduct an initial review of the Third Amended
Complaint to determine whether it may proceed to service on any
of the claims set forth therein. Plaintiff is cautioned that if
the Third Amended Complaint fails to correct the deficiencies
noted in this Order, he may not be permitted an additional
opportunity for amendment.

**(3) If plaintiff changes his address at any time during the
litigation of this case, he MUST notify the Court.** Failure to do
so may result in the dismissal of the case. Plaintiff must
provide notice of a change of address even if he remains
incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on
the notice. It is not enough to just put the new address on a
letter without indicating that it is a new address. If plaintiff
has more than one pending case, he should indicate all of the
case numbers in the notification of change of address. He should

also notify the defendants or defense counsel of his new
address.

A separate case management and scheduling order will enter
when counsel appears for any defendant.

SO ORDERED at New Haven, Connecticut, this 24th day of
February 2022.

_____/s/_____
Hon. Sarah A. L. Merriam
United States District Judge