**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RICHARD R. QUINT, | ) | CASE NO. 3:21-cv-1695 (KAD) |
| *Plaintiff,* | ) | |
| v. | ) | |
| | ) | |
| MARTIN, et al., | ) | JANUARY 19, 2023 |
| *Defendants.* | ) | |

<u>**INITIAL REVIEW ORDER**</u>
**RE: THIRD AMENDED COMPLAINT**

Kari A. Dooley, United States District Judge:

Previously, *pro se* Plaintiff, Richard R. Quint ("Quint"), filed a Second Amended Complaint under 42 U.S.C. § 1983 against ten defendants.[1] On February 24, 2022, the Court[2] dismissed the Second Amended Complaint. *See* Doc. No. 17. The Court permitted Quint to file a Third Amended Complaint by March 28, 2022 to correct the deficiencies identified in the Initial Review Order. *See id*. at 21. The Order notified Quint that if he failed to correct the deficiencies, he might not be permitted an opportunity to further amend his complaint. *See id*. Quint did not file a Third Amended Complaint by March 28, 2022. Instead, on March 17, 2022, he filed a notice of interlocutory appeal. *See* Doc. No. 19.

On October 6, 2022, the Court of Appeals issued a mandate dismissing Quint's appeal. *See* Doc. No. 38. On December 5, 2022, without seeking permission to do so, Quint filed a Third Amended Complaint. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 15(a)(1) provides that a plaintiff may amend his complaint once, as of right, under certain conditions. Any other

---

[1] Plaintiff named Warden Martin, Lieutenant Hacket, Officer Spieght, Counselor King, Counselor Jones, Counselor JackoRusso, Dr. Rader, Medical Supervisor Kara Philips, RN Tracy Patterson, and Nurse Jesse.

[2] This case was reassigned to the undersigned on October 5, 2022, having been previously assigned to the Honorable Sarah A. L. Merriam, then-District Judge. *See* Doc. No. 37.

amendments are permitted only by leave of court or with the consent of the defendants. *See* Fed. R. Civ. P. 15(a)(2). Further, Quint has not only attempted to correct deficiencies identified by Judge Merriam, but has also included entirely new claims. Notwithstanding, in light of the transfer of the case to the undersigned, the Court will review the Third Amended Complaint and determine whether Quint corrected the deficiencies noted in the earlier Initial Review Order and will assess the newly asserted claims as well. Quint is cautioned, however, that the Court will not entertain any further amendments filed without leave of court.

Quint now names twenty-one defendants in the Third Amended Complaint: Commissioner Angel Quiros, Warden Robert Martin, Lieutenant Hacket, Officer Spieght, Dr. Rader, Nurse Supervisor Kara Philips, Nurse Jesse Jusseaume, Nurse Tracy Patterson, Lieutenant Pierson, Colleen Gallagher, Counselor King, Warden McClenden, Dr. Blumberg, Nurse Erica, Nurse Tanisha, Nurse Baladini, Lieutenant Goldman, Nurse Jacksen, Nurse Shaniqua Parker, Nurse Stephanie, and APRN Elizabeth—and alleges that these individuals have violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and Article First, Sections 1, 8, 9, and 20 of the Connecticut Constitution. Quint does not indicate the capacity in which he names any defendant. As he seeks damages as well as declaratory and injunctive relief, the Court assumes that all defendants are named in their individual and official capacities.

**Standard of Review**

Under Section 1915A of Title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See id.* In reviewing a *pro se* complaint, the Court must assume

the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

Prior to his incarceration, Quint was "hit by a pickup truck crushing the front of his pelvis and causing other significant injuries." Doc. No. 39 ¶ 1. On January 22, 2021, Quint was placed in the Department of Correction under the custody of Commissioner Quiros. *See id.* ¶ 2. He initially was housed at Bridgeport Correctional Center ("Bridgeport") where he was issued an "ergonomical cane." *Id.* ¶ 3.

On March 18, 2021, Quint was transferred to Corrigan-Radgowski Correctional Center ("Corrigan") and brought his cane with him. *See id.* ¶ 4. On July 25, 2021, Quint asked Nurse Patterson for a new rubber tip for his cane. Quint showed Nurse Patterson how the metal had worn through the rubber tip on his cane and told her that he feared falling again with the worn tip. Nurse Patterson said that she would return later to retrieve the cane to replace the tip. *See id.* ¶ 5.

Officer Spieght came to Quint's cell to tell him that medical was coming to get the cane. Quint told Officer Spieght that the cane was near the cell door. Officer Spieght looked at the cane and left but returned a few minutes later and confiscated the cane, saying it was contraband. *See*

*Id.* ¶ 6.

Quint contends that he was unable to leave his cell for 200 days because Dr. Rader, Nurses Philips and Jusseaume, and Lieutenant Hacket told Quint "to use the wooden cane, that the plaintiff had fallen with previously and was traumatized by telling him it would be the only thing they would give him…" *Id.* ¶ 7. Quint's legs became "more lethargic" and began to atrophy. *See id.*

On January 7, 2022, Quint saw Dr. Maletz, an orthopedist. Dr. Maletz ordered a wheelchair for Quint, but the wheelchair was provided to him only to go to court. *Id.* ¶ 8. On February 10, 2022, Quint was transferred back to Bridgeport, where Nurse Tanisha took his wheelchair. *See id.* ¶ 9. Dr. Blumberg and APRN Elizabeth then discontinued Quint's pain medication that he needed to be able to move. *See id.* ¶ 11.

Quint fell, striking his head, three times. After he fell the third time, Quint asked to go to an outside hospital. He contends that Nurses Tanisha, Erica, and Baladini were denying him proper treatment. *See id.* ¶ 12. Nurse Baladini issued Quint a disciplinary report for threatening her, which Quint alleges was issued to prevent him from being taken to the hospital for care. Lieutenant Goldman then put Quint in a strip cell and denied him any medical care for the falls. *See id.* ¶ 13.

On April 11, 2022, Quint was transferred to New Haven Correctional Center ("New Haven"). He was given a wheelchair when he left Bridgeport, but Nurse Jackson[3] took the wheelchair when he arrived at New Haven. *See id.* ¶ 14. Quint again saw Dr. Maletz who reinstated his pain medication and ordered a wheelchair. *See id.* ¶ 15.

Nurses Jacksen, Parker, and Stephanie harassed him by "abusing" Dr. Maletz's order for pain medication three times per day. *Id.* ¶ 16.  They would refuse to give him the medication upon

---

[3] In certain paragraphs of the Amended Complaint, Quint refers to a "Nurse Jackson," who the Court assumes to be the same individual as the "Nurse Jacksen" named as a defendant.

request or at all. *See id.*

On May 17, 2022, Quint returned to Corrigan. Quint alleges that Dr. Rader and Nurse Supervisor Philips were not permitting him to see Dr. Maletz at that time. *See id.* ¶ 17.

On September 13, 2022,[4] Dr. Rader increased Quint's medication dosage from twice a day to three times per day. On September 17, 2022, Quint went to court and Dr. Freston, the acting medical director for the Department of Correction, increased Quint's oxycodone dosage from 5 mg to 10 mg. Dr. Rader and Nurse Philips deny that this occurred and refused to increase his dosage. *See id.* ¶ 18

Quint has submitted a request for reasonable accommodation to ADA Coordinator Lieutenant Pierson, who has denied the requests that his medication be brought to him in the afternoon and that he receive a "derby pinnacle medical mattress" because the medical mattress he was given causes back pain. *Id.* ¶ 19. Quint appealed the denials to ADA Coordinator Colleen Gallagher but she also denied the requests. ADA Coordinator Gallagher told Quint that he could have the foam mattress provided to all inmates if he did not like the medical mattress he had been provided. She also denied his request to have his afternoon medication delivered to him because there was no order for delivery of afternoon medication in Quint's medical records. Quint contends that the movement of his arms to propel his wheelchair to the medical unit to get his afternoon medication causes pain to the implants holding his pelvis to his sacrum. *See id.* ¶ 20.

Quint tried to order the Jailhouse Lawyers Manual from Columbia School of Law. *See id.* ¶ 23.  When the book arrived, Counselor King, a member of the Media Review Panel, rejected the book as weighing more than 4.5 pounds. *See id.* ¶ 24.

---

[4] Quint refers to September 13, 2021 in the Third Amended Complaint but the Court assumes this to be a typographical error.

**Discussion**

Quint does not include a section setting forth his legal claims. In his introductory paragraph, he mentions the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article First, Sections 1, 8, 9, and 20 of the Connecticut Constitution. Within his statement of facts, he references claims for deliberate indifference to medical needs and denial of his First Amendment right to freedom of speech. He also references his ADA (Americans with Disabilities Act) requests for accommodation.

*Fifth and Eighth Amendment Claims*

Although Quint alleged in his Second Amended Complaint that he was a pretrial detainee, he does not identify his status in the Third Amended Complaint.[5] The Court, however, may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of Bureau of Prisons inmate location information); *Ligon v. Doherty*, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate locator information). The Court takes judicial notice of the Connecticut Department of Correction website, which reports that Quint remains an unsentenced inmate. *See* Connecticut Department of Correction, Inmate Information, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=123433 (last visited Jan. 17, 2022). Thus, the Court concludes that Quint is a pretrial detainee.

The Eighth Amendment applies only to sentenced inmates. *See Whitley v. Albers*, 475 U.S.

---

[5] In the Initial Review Order, Judge Merriam informed Quint that any Third Amended Complaint he filed would completely replace the Second Amended Complaint and that no portion of the Second Amended Complaint would be incorporated into the Third Amended Complaint or considered by the Court. *See* Doc. No. 17 at 20–21. Thus, Quint was on notice that any claims he intended to assert in this action must be included in the Third Amended Complaint and supported by facts alleged therein.

312, 327 (1986) (Eighth Amendment affords protection for sentenced prisoners); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (claim of sentenced prisoners are cognizable under the Eighth Amendment while claims of unsentenced prisoners are cognizable under the Fourteenth Amendment).

In addition, the Fifth Amendment Due Process Clause applies to federal, not state, inmates. *See Jackson v. Walker*, No. 3:22-CV-1051 (OAW), 2022 WL 16573562, at *3 (D. Conn. Nov. 1, 2022). Thus, as a pretrial detainee in a state facility, Quint cannot state a cognizable claim under the Eighth or Fifth Amendment, and any such claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

*Official Capacity Claims for Damages*

In the Second Amended Complaint, Quint sought damages from the defendants but did not specify whether he sought the damages from the defendants in their individual or official capacities. In the Initial Review Order, the Court explained that claims for damages against the defendants in their official capacities are barred by the Eleventh Amendment and dismissed all such claims with prejudice. *See* Doc. No. 17 at 7–8. In the Third Amended Complaint, Quint again fails to indicate in which capacity he seeks damages from the defendants. Any claims for damages against the defendants in their official capacities are dismissed with prejudice for reasons stated in the prior Order.

*Deliberate Indifference to Medical Needs*

Quint alleges that defendants Dr. Rader, Dr. Blumberg, APRN Elizabeth, Nurses Philips, Jusseaume, Patterson, Erica, Tanisha, Baladini, Jacksen, Parker, Stephanie, and Elizabeth, as well as Officer Hacket were deliberately indifferent to his serious medical needs.

To demonstrate the required constitutional deprivation to state a claim for deliberate indifference to serious medical needs, a detainee must first show that his medical need was "sufficiently serious." *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280. A "sufficiently serious" deprivation can exist if the detainee suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *see also Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Quint alleges that he suffered severe pelvic injuries in a motor vehicle accident and walks with a cane. He further alleges that his injuries cause him to suffer severe pain. For purposes of initial review only, the Court determines that Quint has plausibly alleged that he suffers from a serious medical need. Quint must also plausibly allege that the defendants had the requisite *mens rea* for a deliberate indifference claim. Quint must allege facts to support the inference that "the

defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Negligence is insufficient to satisfy this component. *See id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently). Distinguishing between negligent and reckless medical care is difficult when the court considers only the allegations in the complaint. *See King v. Falco*, No. 16 CV 6315 (VB), 2018 WL 6510809, at *9 (S.D.N.Y. Dec. 11, 2018) (citations and quotations omitted). Courts frequently consider the "degree of risk associated with the negligent treatment," and have found reckless conduct where the plaintiff did not receive treatment for a documented injury. *Id.* (citing cases).

### Wooden Cane

Quint alleges that he has been unable to leave his cell for 200 days because Dr. Rader, Nurses Philips and Jesseaume, and Lieutenant Hacket have ordered him to use a wooden cane and refuse to provide him the metal cane he prefers. He alleges that, as a result, his legs have atrophied, and his condition has worsened. In the Initial Review Order, the Court determined that the requirement that he use a wooden cane rather than a metal one is a disagreement over treatment, which is insufficient to support a deliberate indifference claim. *See* Doc. No. 17 at 18. As Quint has merely reasserted this same claim here, the claim is dismissed.

### Denial of Pain Medication

Quint includes several allegations regarding his pain medication. He contends that Dr. Maletz prescribed pain medication but Dr. Blumberg and APRN Elizabeth discontinued the order

in February 2022. Dr. Maletz reinstated the medication prescription in April 2022. He also alleges that in a state court proceeding in September 2021, Dr. Freston increased his oxycodone dosage, but Dr. Rader and Nurse Philips denied that this occurred and would not provide him the increased dosage. Quint contends that Nurses Jacksen, Parker, and Stephanie refused to give him prescribed medication three times per day.

First, Quint alleges that Nurses Jacksen, Parker, and Stephanie harassed him by "abusing" Dr. Maletz's order for pain medication three times per day. They would refuse to give him the medication upon request or at all. Second, he also alleges that Dr. Rader and Nurse Philips refused to adhere to the prescription change instituted by Dr. Freston.

Intentionally failing to follow a doctor's order is sufficient to state a cognizable claim for deliberate indifference to medical needs. *See Benn v. Nassau Cnty.*, No. 10-CV-1963 (JS) (AKT), 2010 WL 2976540, at *6 (E.D.N.Y. July 22, 2010) (failure to comply with a doctor's order sufficient to withstand initial review); *Woods v. Goord*, No. 01 CIV. 3255 (SAS), 2002 WL 731691, at *5 (S.D.N.Y. Apr. 23, 2002) (allegation that doctor ignored surgeon's order sufficient to withstand motion to dismiss). The Court will permit the claims for denial of medication to proceed against defendants Jacksen, Parker, Stephanie, Rader, and Philips.

The Court cannot determine, on the current record, whether the discontinuance of the prescription by Dr. Blumberg and APRN Elizabeth is a disagreement over treatment or failure to comply with a doctor's order. Thus, this claim may also proceed for further development of the record.

### Medical Treatment

Quint alleges that he fell three times. After the third fall, he asked to go to an outside

10

hospital but was denied that opportunity. Quint generally alleges that Nurses Tanisha, Erica, and Baladini denied him proper treatment. As he includes no other allegations regarding medical care provided by these three nurses, the Court assumes that they denied his request to go to an outside hospital. Quint also alleges that Lieutenant Goldman denied his request for medical treatment for falling.

This claim concerns treatment for injuries sustained in a fall, not Quint's underlying condition. Despite the fact that Quint was told that he must allege sufficient facts to "demonstrate a plausible right to relief," Doc. No. 17 at 3 (citing *Twombly*, 550 U.S. at 555–56), and cautioned that "[c]onclusory allegations are not sufficient," *id.*, Quint asserts only a conclusory claim. He fails to allege facts describing any injury suffered in the fall, or whether the nurses provided any medical care at all. As Quint has failed to follow the Court's instructions, the claims for denial of medical care against defendants Tanisha, Erica, Baladini, and Goldman are dismissed.

### *Denial of Access to Consultant*

Quint alleges that when he returned to Corrigan in May 2022, defendants Rader and Philips would not permit him to see Dr. Maletz. Quint does not allege that Dr. Maletz had asked to see him, only that he wanted a consultation. Like the disagreement over the type of cane, this allegation is merely a disagreement over treatment, which is not cognizable under Section 1983. The claim against defendants Rader and Philips for denial of access to the consultant is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### *Denial of Wheelchair*

In January 2022, Dr. Maletz ordered a wheelchair for Quint, but the wheelchair was provided only when he went to court. In April 2022, Dr. Maletz again ordered a wheelchair. Quint

was provided a wheelchair when he was transferred to a different correctional facility, but once he arrived, the nurses—Jacksen at New Haven and Tanisha at Bridgeport—took the wheelchair away. Like the claim for denial of prescribed medication, this claim involves failure to comply with a doctor's orders and survives initial review.

*Due Process*

Quint alleges that Nurse Baladini issued Quint a disciplinary report for threatening her. He further alleges that she issued the disciplinary report to prevent him from being taken to the hospital for care, suggesting that the charge was false. A false disciplinary charge is actionable only if the inmate is denied due process at the associated disciplinary hearing. *See Mitchell v. Senkowski,* 158 F. App'x 346, 349 (2d Cir. 2005); *see also Barnes v. Cnty of Monroe*, 85 F. Supp. 3d 696, 735 (W.D.N.Y. 2015) (dismissing claim for false charges because "even if the charges were false, this does not amount to a due process violation as long as plaintiff was afforded a fair opportunity to refute the charges"). As Quint alleges no facts regarding the disciplinary hearing, he fails to state a cognizable claim based on the allegedly false disciplinary charge. This claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

*First Amendment Freedom of Speech*

Quint tried to order the Jailhouse Lawyers Manual from Columbia School of Law. When the book arrived, Media Review Counselor King rejected the book as weighing more than 4.5 pounds without stating the exact weight of the book. Quint unsuccessfully asserted this claim in the Second Amended Complaint as a claim for denial of access to the courts. Now, he contends that Counselor King's action violated his First Amendment right to freedom of speech.

"In the First Amendment context…a prison inmate retains those First Amendment rights

12

[of freedom of speech] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Thus, a prison official's enforcement of prison regulations that restrict an inmate's First Amendment right to freedom of speech is constitutional if enforcement is tied to a legitimate penological interest. *See Giano v. Senkowski*, 54 F.3d 1050, 1052–53 (2d Cir. 1995); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) (to establish First Amendment violation, prisoner must show that restriction on his speech was not "reasonably related to legitimate penological interests.").

Quint alleges that his publication was rejected because it violated the weight restriction. There are no reported cases in this circuit holding that a weight restriction on publications violates a prisoner's right to freedom of speech. Nor have other circuits found that a weight restriction violated First Amendment rights. *See, e.g., 'Torah v. Emrich*, Civ. No. 20-5533 (PGS) (TJB), 2022 WL 4540812, at *3 (D.N.J. Sept. 28, 2022) (noting that court has not found a published decision from the Supreme Court or Third Circuit holding that a ban on books based on their weight violates the First Amendment and granting defendants' qualified immunity on this claim); *see also Kramer v. Conway*, 962 F. Supp. 2d 1333, 1346 (N.D. Ga. 2013) (finding limits on the weight of incoming packages was reasonably related to legitimate safety and security interests and noting that hardcover books and, in sufficient quantities, softcover books may be used as weapons).

Absent any cases holding that a weight restriction on books violates an inmate's right to freedom of speech, Quint fails to state a plausible First Amendment claim against Counselor King. The claim against Counselor King is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

*Supervisory Liability*

Quint identifies defendant Quiros as the Commissioner of Correction and defendants Martin and McClendon as wardens. Thus, they are supervisory officials. In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit held that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). Knowledge that unconstitutional acts were occurring is insufficient to state a claim for supervisory liability. "A supervisor's 'mere knowledge'…is not sufficient because that knowledge does not amount[] to the supervisor's violating the Constitution." *Id.* at 616–17 (quoting *Iqbal*, 556 U.S. at 677).

Quint was informed in the Initial Review Order that he must allege facts demonstrating the personal involvement of each defendant in his claims. *See* Doc. No. 17 at 9 (dismissing without prejudice claims against three defendants for failure to include substantive allegations against them). In the Third Amended Complaint, Quint alleges no facts demonstrating the personal involvement of these three defendants. Thus, any claims against defendants Quiros, Martin, and McClendon are dismissed pursuant to 28 U.S.C. § 1915A(b)(1). As this is Quint's Third Amended Complaint, the dismissal is with prejudice as to these claims.

*ADA Claims*

Quint contends that his rights under the ADA, 42 U.S.C. § 12101, *et seq.*, were violated because he was denied requested accommodations. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by such entity." 42 U.S.C. § 12132. To state a cognizable ADA claim, Quint must establish three factors: (1) he is a qualified person with a disability, (2) the defendants in their individual or official capacities are considered an entity subject to the ADA, and (3) he was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disabilities. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

Quint alleges that he has difficulty walking without an assistive device. For purposes of initial review, the Courts assumes that Quint is a qualified person with a disability. The ADA applies to state prisons. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S 206, 209 (1998) (holding that the ADA "unmistakably includes State prisons and prisoners within its coverage."). Thus, the issue is whether Quint has been discriminated against because of his disability.

There are three theories an individual may use to establish the third element of an ADA claim "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009); *see also Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565 573 (2d Cir. 2003) (explaining that the ADA requires that "covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities" (citation omitted)). Quint asserts that the defendants failed to make reasonable accommodations for his disability.

Quint alleges that using his arms to propel the wheelchair to go to the medical unit to get his afternoon medication causes pain to the implants in his hips and that the medical mattress he was given is too hard. He asked defendants Pierson and Gallagher to order that his medication be

brought to him in the afternoon and that he receive a "derby pinnacle medical mattress." They denied these requests.

The ADA is intended "to ensure evenhanded treatment between the disabled and the able-bodies." *Green v. Maldonado*, 3:17-cv-00957 (CSH), 2017 WL 3568662, at *4 (D. Conn. Aug. 17, 2017) (quoting *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) (internal quotation marks omitted)). The ADA "do[es] not guarantee any particular level of medical care for disabled persons, nor assure maintenance of services previously provided." *CERCPAC v. Health & Hosp. Corp.*, 147 F.3d 165, 168 (2d Cir. 1988).

Defendant Gallagher denied Quint's requests because there was no order in his medical file for afternoon delivery of his medication and he had been given a medical mattress, just not the one he wanted. Thus, Quint is seeking additional medical orders through his ADA requests. As the ADA does not guarantee medical care of the prisoner's choosing, Quint fails to state a cognizable ADA claim. The ADA claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

*State Constitutional Claims*

Quint alleges that the defendants violated his rights under Article First, Sections 1, 8, 9, and 20 of the Connecticut Constitution. In *Binette v. Sabo,* 244 Conn. 23, 26, 710 A.2d 688 (1998), the Connecticut Supreme Court recognized a private right of action for damages under Article First, Section 9 of the Connecticut Constitution for the illegal search and seizure of private homes by police officers. The court emphasized, however, that the decision to recognize a private right of action in that case, "does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47. The decision to recognize such causes of action would be made on a case-by-case basis after "a multifactor analysis." *Id.* at 48. The Connecticut Supreme Court

has not extended the private right of action under Article First, Section 9 to cases filed by prisoners. *See Silvera v. Connecticut Dep't of Corr.*, 726 F. Supp. 2d 183, 199–200 (D. Conn. 2010) (declining to exercise supplemental jurisdiction over a claim under Article First, Section 9 for forcing pretrial detainee to share a cell with convicted inmate and providing inadequate mental health as novel and undeveloped issue of state law). As the Connecticut Supreme Court has not yet applied Section 9 to state prisoners, this Court declines to exercise supplemental jurisdiction over this claim.

Nor will the Court recognize in the first instance claims for violation of Article First, Sections 1, 8, and 20. *See, e.g., Woolard v. Santiago*, Case No. 3:19cv1256 (VLB), 2020 WL 2079533, at *11 (D. Conn. Apr. 30, 2020) ("This court and the Connecticut Superior Court have routinely declined to recognize a private right of action under Article first sections 8 and 20 of the Connecticut Constitution."); *St. Louis v. Wu,* Case No. 3:19cv320 (KAD), 2019 WL 2357566, at *7 (D. Conn. June 4, 2019) (Connecticut courts have repeatedly declined to recognize a private right of action under Article First, Section 1 and 20 of the Connecticut Constitution (citing cases)).

Given that these are novel and undeveloped issues of state law and out of deference to the State as the final arbiter of its own constitution, the Court declines to exercise supplemental jurisdiction over Quint's state constitutional claims. *See* 28 U.S.C. § 1367(c)(1) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if…the claim raises a novel or complex issue of State law.").

**Orders**

All First, Fifth, and Eighth Amendment claims, the ADA claim, any Fourteenth Amendment due process claims, and any claims for damages from the defendants in their official

capacities are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b).

The case will proceed on the Fourteenth Amendment claims of deliberate indifference to medical needs against defendants Jacksen, Parker, Stephanie, Rader, Philips, Blumberg, and Elizabeth for failure to comply with doctor's orders regarding medication and against defendants Tanisha and Jacksen for failure to comply with the doctor's order that Quint be provided a wheelchair. All other deliberate indifference to medical needs claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The Court declines to exercise supplemental jurisdiction over Quint's state constitutional claims. He may pursue those claims in state court if he so chooses.

The court enters the following additional orders.

(1)     **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for defendants Jacksen, Parker, Stephanie, Rader, Philips, Blumberg, Elizabeth, and Tanisha, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at that address on or before **February 9, 2023** and report to the court on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the cost of such service.

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Third Amended Complaint on defendants Jacksen, Parker, Stephanie, Rader, Philips, Blumberg, Elizabeth, and Tanisha in their official capacities at the Office of the Attorney General, 165 Capitol

Avenue, Hartford, CT 06106, on or before **February 9, 2023** and to file a return of service on or before **February 19, 2023.**

(3)     **The Clerk shall** send plaintiff a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **August 19, 2023**. Discovery requests shall not be filed with the Court.

(7)     All motions for summary judgment shall be filed by **September 19, 2023**.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. **FAILURE TO DO SO MAY RESULT IN DISMISSAL OF THIS CASE.** The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney

19

for the defendants of his new address.

(10)   The plaintiff shall utilize the Prisoner E-filing Program when filing documents with the Court. The plaintiff is advised that the Program may be used only to file documents with the Court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(11)   The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this 19th day of January 2023 at Bridgeport, Connecticut.

_Kari A. Dooley_____
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE