UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD R. QUINT, | ) | CASE NO. 3:21-cv-1695 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ELIZABETH OEI, | ) | JUNE 6, 2025 |
| *Defendant*. | ) | |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT OEI'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 132)**

Kari A. Dooley, United States District Judge:

Plaintiff Richard R. Quint ("Quint") filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights as a pretrial detainee. Following initial review of the operative Third Amended Complaint, the following claims remain: Fourteenth Amendment claims for deliberate indifference to medical needs against Defendants Jackson, Parker, Stephanie, Rader, Phillips, Blumberg, and Oei arising out of their alleged failure to comply with doctor's orders regarding medication and against Defendants Tanisha and Jackson for failure to comply with the doctor's order regarding his need for a wheelchair. Initial Review Order, ECF No. 42 at 18.[1] Defendant Elizabeth Oei ("Defendant") seeks summary judgment on three grounds: Quint failed to exhaust his administrative remedies before commencing this action, Quint's Fourteenth Amendment deliberate indifference to medical needs claims fail as a matter of law, and she is entitled to qualified immunity.[2] Because the Court agrees that Quint did not exhaust his administrative remedies, the motion for summary judgment, ECF No. 132, is GRANTED.

**Standard of Review**

---

[1] All claims against Defendants Rader and Phillips were subsequently dismissed. *See* Mem. of Decision, ECF No. 106 at 8

[2] By memorandum of decision dated this same day, a motion for summary judgment filed by the remaining defendants was granted in its entirety.

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense. . . ." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the Court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the Court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224

F.3d 33, 41 (2d Cir. 2000).

**Facts**[3]

The following facts relate to the claims against Defendant Oei. At all times relevant to this action, Quint has been incarcerated as a pretrial detainee. Def.'s Local Rule 56(a)(1) Statement ("LRS"), ECF No. 132-1 at 1 ¶ 1. Defendant was privately contracted by the Department of Correction ("DOC") and worked at Bridgeport Correctional Center ("BCC") when she interacted with Quint. *Id*. at 1–2 ¶¶ 2, 8.

While Quint was incarcerated at a different correctional facility, Dr. Rader prescribed Oxycodone for Quint. *Id*. at 2 ¶ 4. At Quint's request, Dr. Rader increased the Oxycodone dosage to 10 mg, three times per day, but told Quint that this increased dosage would be on a short-term basis while other non-narcotic medications were tried. *Id*. at ¶¶ 5–6.

Defendant met with Quint when he returned to BCC in February 2022. *Id*. at ¶ 8. She treated him on February 14, 2022, February 28, 2022, and March 4, 2022. *Id*. at 6 ¶¶ 29–30.

Defendant, after consulting with Dr. Rader, determined it was medically appropriate to begin weaning Quint from Oxycodone while initiating Gabapentin and ordering x-rays and an

---

[3] The facts are taken from Defendant's Local Rule 56(a) Statements and supporting exhibits filed by both parties. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.
  Defendant informed Quint of his obligation to respond to the motion for summary judgment and the contents of a proper response. *See* Def.'s' Notice to Self-Represented Litigant Concerning Motion for Summary Judgment as Required by Local Rule of Civil Procedure 56(b), ECF No. 132-2. Rather than filing a Local Rule 56(a)2 Statement and memorandum, Quint's opposition consists of an objection setting forth the facts as he perceives them and several exhibits. *See* ECF No. 133. The fact that Quint is unrepresented does not excuse him from complying with the court's procedural and substantive rules. *See Evans v. Kirkpatrick*, No. 08-cv-6358 (T), 2013 WL 638735, at *1 (W.D.N.Y. Feb. 20, 2013) (citing *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006); *see also Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) ("when a plaintiff is proceeding *pro se*, all normal rules of pleading are not absolutely suspended" (citation and internal quotation marks omitted)). Thus, Defendant's facts, when supported by the evidence of record, are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions. . . .").

3

orthopedic consult. *Id*. at 2 ¶ 9; *id.* at 9 ¶ 38(d). Dr. Rader concurred with this decision and stated "the best medical practices recommend that chronic pain is not treated with opiates." *Id*. at 3 ¶¶ 10, 13. The decision to wean Quint from Oxycodone was based, in part, on observations by other medical staff that Quint had balance issues immediately after taking Oxycodone. *Id*. at 10 ¶ 38(i).

From February 14, 2022 through March 11, 2022, Quint was tapered off Oxycodone. *Id*. at 3 ¶ 14. Quint disagreed with this decision and refused to take the other medications. *Id*. at ¶ 15. On February 22, 2022, Dr. Blumberg responded to a medical sick call request by Quint, but Quint refused to permit her to examine him and did not request that she review or reverse Defendant's order to wean Quint from Oxycodone. *Id*. at 10–11 ¶ 40. During this time, other medical staff noted that Quint expressed no complaints of pain and showed no signs of discomfort and that he was refusing to use the medical mattress he had requested to help manage his pain. *Id*. at 11–12 ¶¶ 41, 43. Also on February 22, 2022, Quint refused to take Gabapentin and told another nurse that he was allergic to the medication. *Id*. at 11 ¶ 42. No allergy was noted in Quint's medical records. *Id*. at 11–13 ¶¶ 42, 44(c).

On February 28, 2022, Defendant saw Quint at this cell both in response to a medical request and for his weekly review. *Id*. at 12 ¶ 44(a). Defendant was unable to examine Quint because he was aggressively pacing about in his cell. *Id*. Quint claimed he had a court order that he be given Oxycodone 10 mg, three times per day, but would not produce a copy of the order or any supporting documentation. *Id*. at ¶ 44(b).

On March 4, 2022, Defendant saw Quint at his cell door. *Id*. at 13 ¶ 45(a). Quint refused any new x-rays, claiming he knew his condition and demanded his pain medication on threat of a lawsuit. *Id*. at ¶ 45(b).

On April 7, 2022, Defendant cosigned an infirmary note which documented that Quint was

seen walking around his cell, lifting boxes, and moving his hospital bed without issue or complaints of pain. *Id*. at 14 ¶ 47. On April 11, 2022, Quint was transferred to another correctional facility and Defendant was no longer involved in his care. *Id*. at 4 ¶ 16.

Janine Brennan, a health services administrative remedies coordinator, has reviewed the DOC database for all health services administrative remedies filed by Quint, at all correctional facilities, from January 1, 2021 to January 1, 2023. *Id*. at 5 ¶ 22. Quint filed his first health services administrative remedy during this period on June 8, 2022. *Id*. at ¶ 23. That remedy did not mention Defendant or Quint's claims that medical staff were not following doctor's orders. *Id*. at ¶ 25. Other administrative remedies he filed were rejected because Quint did not comply with the procedural requirements for filing a health services administrative remedy. *Id*. at 6 ¶ 27. None of the administrative remedies Quint filed mentioned Defendant or any treatment she provided. *Id*. at ¶ 28.

**Discussion**

Defendant moves for summary judgment on the grounds that Quint did not properly exhaust his administrative remedies, that the record evidence does not show that she was deliberately indifferent to his medical needs, and, although a private person, she is entitled to the qualified immunity afforded to correctional employees. Because the Court finds the first ground dispositive, it does not address the remaining two grounds.

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies *before* a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

5

exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion": the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. Appx. 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-cv-6606 (RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("The law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

The Supreme Court has held that the requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217–18 (citing *Woodford*, 548 U.S. at 93–95). In addition, exhaustion of administrative remedies must be completed before the inmate files suit. *Baez v. Kahanowicz*,

278 F. Appx. 27, 29 (2d Cir. 2008). Completing the exhaustion process after the complaint is filed does not satisfy the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122–23 (2d Cir. 2001).

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted).

The *Ross* Court identifies three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the Court is guided by these illustrations. *See Mena v. City of New York*, No. 13-cv-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendant bears the burden of proof. *See Jones*, 549 U.S. at 216. Once the defendant puts forth evidence that administrative remedies were not exhausted before the plaintiff commenced the action, the plaintiff

7

must put forth evidence that administrative remedy procedures were not available to him under *Ross*, or evidence which shows that he did exhaust his administrative remedies. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability").

Exhaustion of claims regarding medical needs is governed by DOC Administrative Directive 8.9. *See* Ex. H-1, ECF No. 132-11. Administrative Directive 8.9 provides Health Services Review procedures to address two types of issues or claims related to the medical, dental, or mental health care of an inmate: (1) diagnosis and treatment issues and (2) administrative health care issues involving a procedure, practice, policy, or the improper conduct of a health services provider. *See* Administrative Directive 8.9(6)(i) & (ii).

Before filing a health services administrative remedy, the inmate must attempt to seek informal resolution by speaking with the appropriate staff member or submitting an inmate request form to the appropriate staff member. *See id.* at 8.9(6)(b)(ii). The inmate will be provided a response within fifteen business days after receipt of the written request. *See id.* If the inmate is not satisfied with the response to the written request, he may file a health services administrative remedy. *See id.* at 8.9(6)(b)(iii). The completed Level 1 remedy must include a copy of the inmate request form or explain why the form is not attached. *See. id.* at 8.9(6)(b)(iii)(2). The Level 1 remedy form must be filed within thirty calendar days of the occurrence or discovery of the cause or reason for the request for health services administrative remedy. *See id.* at 8.9(6)(b)(iii)(4). Upon receipt, the health services administrative remedy is reviewed for compliance with the provisions in Administrative Directive 8.9. If the request is not in compliance, it is rejected. *See*

*id.* at 8.9(6)(b)(i). The inmate is afforded five calendar days to correct the procedural deficiency and refile the remedy. *See id.* at 8.9(6)(c)(ii)(2)(a)(i)(1).

For a diagnosis and treatment remedy, the inmate "shall concisely explain the specific diagnosis or treatment decision and specify the date of diagnosis or treatment. The inmate shall explain how he or she is dissatisfied with the diagnosis and treatment, how he or she has been affected, and concisely state the resolution desired." *Id.* at 8.9(6)(c)(i)(1). Upon receipt of a diagnosis and treatment remedy, the health services administrative remedy coordinator ("HSARC") consults the provider who made the decision to determine what action, if any, should be taken. *See id.* at 8.9(6)(c)(i)(2)(a). If the provider decides that the existing diagnosis or treatment is appropriate, the remedy is denied and may not be appealed. *See id.*

If the remedy is not in compliance, it will be rejected and, if correction is possible, the inmate will be afforded five days to correct the defect and resubmit the remedy. *See id.* at 8.9(6)(c)(ii)(2)(a)(i). If the inmate is not satisfied with the response or has not received a response within thirty business days, the inmate may file a Level 2 appeal. *See id.* at 8.9(6)(c)(ii)(4)(a) & (iii)(1).

Defendant has submitted conclusive evidence that Quint did not pursue any administrative remedies regarding any actions taken by Defendant with respect to his medical care, to include her decision to wean him off of Oxycodone. The burden then shifts to Quint to demonstrate a genuine issue of material fact on the issue. Although he filed an opposition to the motion for summary judgment, his opposition did not include any evidence that he exhausted his remedies or, alternatively, that remedies were not available to him. Because Quint was able to file Health Service Review forms as to other issues, the Court may draw the reasonable inference that such remedies were, in fact, available to him. Indeed, Quint does not address Defendant's exhaustion

argument at all. Accordingly, Defendant's motion for summary judgment is granted on the ground that Quint failed to exhaust his administrative remedies.

**Conclusion**

Defendant Oei's Motion for Summary Judgment, ECF No. 132, is GRANTED. The Court also granted summary judgment for Defendants Blumberg, Tanisha, Jackson, Parker, and Stephanie. *See* n.2, *supra*. Accordingly, the Clerk of the Court is directed to enter judgment for all Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of June, 2025.

                                     */s/ Kari A. Dooley*
                                     KARI A. DOOLEY
                                     UNITED STATES DISTRICT JUDGE